## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WOODRON INTERNATIONAL COMPANY,
LLC and KEHINDE OLATUNJI
ADEDEJI,                                              No. 22-CV-12123-DLC

      Plaintiffs,

      v.

BANK OF AMERICA, et al.,

      Defendants.

## ORDER TO REASSIGN TO A DISTRICT JUDGE AND REPORT AND RECOMMENDATION OF DISMISSAL

CABELL, U.S.M.J.

### I.   INTRODUCTION

On December 14, 2022, *pro se* litigant Kehinde Olatunji Adedeji filed a civil complaint on his own behalf and on behalf of Woodron International Company, LLC ("Woodron") against Bank of America ("BOA") and seven others.  The plaintiffs' statement of their claims consisted of a brief allegation that BOA discriminated against them by denying their loan requests.

Now before the Court is Adedeji's amended complaint (Dkt. No. 12), which he filed in response to the Court's order that the original complaint failed to state a claim upon which relief could

be granted.[1]  For the reasons set forth below, the Court will order the Clerk of Court to reassign this action to a District Judge and will recommend to the District Judge that this action be dismissed.

## II.   ORDER TO REASSIGN CASE TO A DISTRICT JUDGE

Pursuant to General Orders (10-1) and (09-3), a case may be randomly assigned, at the time of filing, to a Magistrate Judge. The parties are required to inform the Court within 30 days the last party is served whether they consent or refuse to consent to the final jurisdiction of a Magistrate Judge.  Absent the parties' consent to the final assignment of this case to a Magistrate Judge, a Magistrate Judge is without jurisdiction to dismiss a complaint for failure to state a claim upon which relief may be granted or otherwise involuntarily dismiss an action.  28 U.S.C. § 636(b)(1)(A).

This action was drawn to the undersigned Magistrate Judge under the above-described protocol.  The parties to this action have not indicated whether they consent or refuse to consent to the jurisdiction of the Magistrate Judge.  This is to be expected where, as here, summonses do not issue pending the Court's preliminary screening of the complaint pursuant to 28 U.S.C. § 1915(e)(2).[2]

_____

[1] Adedeji titles this document "Statement of Claim."  The Court construes the pleading as an amended complaint.
[2] Indeed, a defendant in such an action may not even be aware of the pending lawsuit.

As set forth below, this Court concludes that this action is subject to *sua sponte* dismissal.  However, because the parties have not consented to the final assignment of this case to the Magistrate Judge, the Court cannot dismiss the action.  For that reason, the Court will order that the Clerk of Court reassign this case to a District Judge.

### III.  <u>ORDER ON ORIGINAL COMPLAINT</u>

On March 28, 2023, the Court entered an order (Dkt. No. 8) requiring that Woodron be represented by counsel and denying *in forma pauperis* status with regard to Woodron because only a natural person may proceed without prepayment of the filing fee.

The Court concluded that Adedeji, in so far as he was asserting claims on his own behalf, was eligible to proceed *in forma pauperis*.  Upon reviewing the complaint pursuant to 28 U.S.C.§ 1915(e)(2),[3] the Court found that Adedeji had failed to state a claim upon which relief could be granted because the complaint did not provide sufficient factual allegations from which the Court could reasonably infer that the defendants are liable to Adedeji.  The Court explained:

---

[3] When a federal district court allows a plaintiff to proceed *in forma pauperis*, the court may conduct a preliminary review of the plaintiff's complaint (or amended complaint) and dismiss any claims that are malicious, frivolous, seek monetary damages against a party immune from such relief, or fail to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2).

> The complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For example, a plaintiff who brings a claim for a discriminatory denial of a loan must allege[d] specific facts, which, if taken as true, permit the court to reasonably infer that the defendant unlawfully denied a loan on a discriminatory basis. A plaintiff would need to include allegations describing the loan application process, the proposed lo[an] terms, the defendant's proffered reasons for denying the loan, and the reason for which the plaintiff believe[s] that the denial of the loan was the result of unlawful discrimination. In addition, the plaintiff would need to include the approximate dates of the alleged events.

*Id.* at 4-5. The Court ordered that, if Adedeji wished to proceed as party in this action and bring claims on his own behalf, he was required to file an amended complaint within 35 days. The Court also ordered that, if Woodron wished to prosecute the case, within 21 days (1) it had to pay the filing fee; and (2) counsel had to appear for the company.

IV. **ADEDEJI'S AMENDED COMPLAINT**

On May 1, 2023, Adedeji filed his amended complaint (Dkt. No. 12), including 38 pages of exhibits (Dkt. No. 12-1) in response to the Court's order that he file an amended complaint. In the amended complaint, Adedeji names BOA, Harr Toyota, Knight-Dik Insurance ("KD Insurance"), and four "executive drivers" as defendants, claiming that the defendants' alleged misconduct destroyed his nascent charter transportation business.[4] Adedeji

---

[4] Adedeji states that he has made the Statement of Claim "'short' as required by the court . . . because [he] know[s] the court

claims that his business failed because (1) BOA refused to give him a business loan on the ground that he is black and homeless; (2) Harr Toyota, from whom Adedeji sought to purchase vehicles for the transportation business, took advantage of Adedeji as a "black homeless small business owner" and required that the vehicles be insured by KD Insurance; (3) KD Insurance hired drivers from Connecticut for Adedeji's business instead of considering applicants from Massachusetts who had responded to Adedeji's own employment advertisement; and (4) the drivers hired for Adedeji's company failed to remit to the company money earned from using the company vehicles and refused to return the vehicles to the company. *Id.* at 1-2.

### A.   Allegations against BOA

According to Adedeji, sometime before June 30, 2017, he approached BOA and asked the bank for a $3 million business loan -- which would be disbursed in installments -- to establish a charter transport business.  Amend. Compl. at 1.  Based on "the hope they gave to [him] in principle, [he] mailed a letter dated June 30, 2017 to their Headquarters."  *Id.*  "On July 10, 2017, the meeting was held and a further hope was given to [him]."  *Id.*  Adedeji alleges that "[a]ll hopes given to [him] by [BOA] gave

---

has the capability to investigate this case in o[rd]er for [him]
to get justice.  *Id.* at 1.  Apart from considering documents
submitted by the parties, the Court does not "investigate" a
case.

[him] confidence to vigorously pursue[] the business plan but suddenly, [BOA] made a U-turn and discriminately turned [his] request for [a] loan down because [he is] a black man and because they discovered that [he was] homeless." *Id.* Adedeji also asserts that BOA "did not give cognizance to the fact that [he is] a citizen of the USA." *Id.*

### B.   Allegations Against Harr Toyota and KD Insurance

Adedeji alleges that Harr Toyota did not sell him vehicles for his charter transportation business in "utmost good faith." *Id.* at 1. He further claims that there were "fraudulent practices and conspiracies with [KD] Insurance which was unknowingly to [him] orchestrated from the day one when [he] approached Harr Toyota with genuine intention to buy vehicles." *Id.* at 1-2. Adedeji asserts that "Harr Toyota used [him] as an opportunity to close quarterly sales" and "took advantage of [him] as a black homeless small business owner and duped [him]." *Id.* at 2. According to Adedeji, the transaction with Harr Toyota "was a fraudulent sale rather than a business sale" because "Harr Toyota sold the vehicles, arranged [KD] Insurance against [his] wish." *Id.* In turn, KD Insurance "compulsorily and conditionally hired all the Executive Drivers from Connecticut instead of Massachusetts against [Adedeji's] wish and turned down other numerous applicants who applied as Executive Drivers through vacancy placed online by [him]." *Id.*

### C.   Allegations Against the Executive Drivers

Adedeji claims that four executive drivers for his company "used [his] company for Uber, [Lyft] and other private business contracts without remitting the proceeds into [his] company business checking account." *Id.* Adedeji further alleges that the drivers "never returned [his] vehicles they signed for and took over on contract exclusively for the purpose of [his] charter transportation business." *Id.*

### D.   Conclusion to the Statement and Relief Sought

Adedeji alleges, in conclusion:

> It was a cruel set up to destroy a business that was carefully planned and laid-out for success by the [BOA], Harr Toyota, [KD] Insurance in collaboration with the four Executive Drivers simply because I am a homeless black man despite my experience, exposure, track record and capability. They all pretentiously converge[d] to destroy the business while faking to help me. If I [were] a white man, they would have genuinely helped the business rather than destroy it.

*Id.*

Adedeji seeks a total of $26 million in damages --$10 million from BOA, $10 million from Harr Toyota, $5 million from KD Insurance, and $1 million from the executive drivers.

### E.   Exhibits to the Statement

The 38 pages of exhibits to the Statement include a variety of documents, including those concerning Adedeji's prior work and business experience, a letter to BOA including his business plan for Woodron, inquiries he made with insurance companies other than

7

KD Insurance, and BOA's merchant payment service.

Notably, included among the exhibits is a May 9, 2018 letter from Woodron to the Toyota Motor Credit Corporation in which Woodron, through Adedeji, represents that, as of October 2, 2017, the charter transportation business was closed due in part to the fact that Woodron could not procure "the needed $100,000.00 [in] working capital from the Bank of America." (Dkt. No. 12-1 at 3).

## V.   SUBJECT MATTER JURISDICTION

A court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction. *See McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004). Federal courts are of limited jurisdiction, "and the requirement of subject-matter jurisdiction 'functions as a restriction on federal power.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "The existence of subject-matter jurisdiction 'is never presumed.'" *Fafel*, 399 F.3d at 410 (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)). Rather, federal courts "must satisfy themselves that subject-matter jurisdiction has been established." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Federal district courts may exercise jurisdiction over civil actions arising under federal laws, *see* 28 U.S.C. § 1331

8

("§ 1331"), and over certain actions in which the parties are of diverse citizenship[5] and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332 ("§ 1332").  Where a party seeks to invoke the jurisdiction of a federal district court under § 1332, the parties must be of complete diversity.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Complete diversity does not exist where any defendant and any plaintiff are citizens of the same state.  *See id.*

In his original complaint (Dkt. No. 1), Adedeji invokes the Court's diversity subject matter jurisdiction and indicates that he and Woodron are citizens of Massachusetts.  *Id.* at 4.  Instead of identifying the state citizenship of each defendant, he refers to the list of defendants on previous pages, which provides Massachusetts addresses for Harr Toyota, KD Insurance, and two executive drivers.  *Id.* at 2-3.  The Massachusetts defendants identified in the complaint are also defendants in the amended complaint.  Adedeji does not make any jurisdictional allegations in the amended complaint.

---

[5] "For purposes of diversity, a person is a citizen of the state in which he is domiciled." *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008).  A corporation is deemed to be a citizen of every state in which it is incorporated and the state in which it has its principal place of business.  *See* 28 U.S.C. § 1332(c).

Because Adedeji and some of the defendants are citizens of Massachusetts, there is a lack of complete diversity of citizenship between the parties. Thus, jurisdiction under § 1332 does not exist.

Adedeji does not identify any claim under federal law that would provide a basis for jurisdiction under § 1331. Nonetheless, the Court will consider whether the amended complaint adequately pleads a claim under 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts, or under 42 U.S.C. § 1982, which prohibits racial discrimination in the purchase, lease, sale, or ownership of real and personal property.[6]

## VI. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ARISING UNDER FEDERAL LAW

To state a claim upon which relief may be granted, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (stating that "the Federal Rules do not

---

[6] *See* 42 U.S.C. § 1981(a) (providing that all persons "shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens"); 42 U.S.C. § 1982 (providing that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property").

require courts to credit a complaint's conclusory statements without reference to its factual context"). The complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not as onerous as a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc))).

### A.   Allegations of Racial Discrimination

Adedeji's claims of discrimination based on race fail to state a claim upon which relief may be granted as to all the defendants because they are entirely conclusory. For example, Adedeji asserts that BOA ultimately did not give him a business loan "because [he is] a black man and because they discovered that [he] was homeless." Amend. Compl. at 1. In evaluating the sufficiency of a pleading, the Court cannot credit this conclusory allegation

because it is not accompanied by any specific factual allegations from which the Court may reasonably infer that any of the defendants discriminated against him on the basis of race. Further, without calling into question Adedeji's business acumen and experience, a financial institution's decision not to extend a business loan to a person experience housing insecurity does not suggest discrimination on the basis of race. *See, e.g.*, *Frith*, 38 F.4th at 276 ("We cannot infer racial discrimination based on factual allegations that are 'just as much in line with' [a] non-discriminatory explanation we have identified." (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 9 (1st Cir. 2011))).

Similarly, Adedeji's allegation that "Harr Toyota took advantage of [him] as a black homeless small business owner and duped [him]," Amend. Compl. at 2, does not set forth a plausible claim of racial discrimination. It is unclear from the Statement how Harr Toyota allegedly "duped" Adedeji or how Harr Toyota's sale of vehicles to Adedeji "was a fraudulent sale rather than a business sale." *Id.* Further, Harr Toyota's arrangement of insurance with KD Insurance and KD Insurance's hiring of drivers against Adedeji's preference do not permit an inference of racial discrimination.

Adedeji's only claim of racial discrimination by the executive drivers is that they collaborated with the other defendants in a "cruel set up to destroy a business that was

12

carefully planned and laid-out for success . . . because [he is] a homeless black man." *Id.* Although not suggesting that the drivers' alleged theft of company profits and vehicles was lawful, the Court finds that the amended complaint does not set forth a cognizable claim against the drivers for racial discrimination.

### B.   Timeliness of Adedeji's Claims

Moreover, the amended complaint fails to state a claim for racial discrimination under 42 U.S.C. §§ 1981 or 1982 because any such claims are time-barred.[7]   The texts of § 1981 and § 1982 do not contain a limitations period.   Claims under § 1982 and the pre-1991 version of § 1981 "borrow" Massachusetts' three-year statute of limitations for personal injury.   *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 367, 382-84 (2004); *Wilson v. Garcia*, 471 U.S. 261, 267 (1984); M.G.L. ch. 260, § 2A.   Claims arising under 42 U.S.C. § 1981(b), which contains a 1991 amendment to the statute concerning post-contract-formation discriminatory

---

[7] Although the statute of limitations is an affirmative defense, and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts to avoid potential affirmative defenses, a complaint can be dismissed for failure to state a claim if the allegations therein show that relief is barred by the relevant statute of limitations. *See Bock v. Jones*, 549 U.S. 199, 215 (2007).

conduct, are subject to the four-year statute of limitations provided by 28 U.S.C. § 1658. *See Jones*, 541 U.S. at 382-84.

This means that Adedeji had, at the most, four years from the time his claim accrued to bring a lawsuit based thereon. Where a claim is subject to the three-year Massachusetts statute of limitations for a personal injury actions, the claim accrues "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that [he] has been harmed or may have been harmed by the defendant's conduct." *In re Sheedy*, 801 F.3d 12, 20 (1st Cir. 2015) (quoting *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006)); *see Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205-06 (1990). Similarly, discrimination claims subject to the four-year statute of limitations of 28 U.S.C. § 1658 accrue when the alleged discriminatory conduct has a "crystallized and tangible effect" on the plaintiff, and he has "notice of both the act and its invidious etiology." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 318 n.8 (1st Cir. 2016) (quoting *Buntin v. City of Boston*, 813 F.3d 401, 405 (1st Cir. 2015)).

Here, it is clear from Adedeji's complaint that his claims are time-barred. As noted above, Adedeji submitted as an exhibit to his complaint a May 9, 2018 letter in which he states that his charter transportation closed in October 2017 in part because of the lack of funding from BOA. Adedeji commenced this action in

14

December 2022, more than five years after his business had closed and more than four years after the date of the letter.  Nothing in the complaint suggests that his claims accrued less than four years prior to the commencement of the action.

### VII. <u>CONCLUSION</u>

In accordance with the foregoing discussion, the Court **ORDERS** that this action be reassigned to a District Judge.  The Court further **RECOMMENDS**[8] to the District Judge to whom the action is assigned that the action be **DISMISSED** in its entirety because (1) Adedeji's amended complaint fails to state a claim upon which relief may be granted; and (2) counsel did not appear for Woodron.

<u>So ordered</u>.

          /s/ Donald L. Cabell
          DONALD L. CABELL, U.S.M.J.

DATED:  August 28, 2023

---

[8]  The parties are advised that, under Fed. R. Civ. P. 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the First Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983).